## Stackpole Trust

*A. J. Straub*, for exceptant.

*John H. Cartwright, Reed, Smith, Shaw & McClay*, contra.

HIPPLE, P. J., November 4, 1949.—This matter comes before the court upon exceptions filed by George

J. Fehrenbach, guardian ad litem for Jude Stackpole, minor son of Harry C. Stackpole, deceased, to the confirmation absolute of the first and final account of James Hall Stackpole, trustee under an indenture of trust executed by Harry C. Stackpole, dated March 31, 1930.

By this trust indenture, Harry C. Stackpole, herein called settlor, transferred to James Hall Stackpole, herein called trustee, 210 shares of the common stock of Stackpole Carbon Company, a Pennsylvania corporation, having a book value of $541.26 per share, or a total book or intact value of $113,664.60. The indenture provided that the net income of the trust should be paid to settlor during his life and upon his death, the trust should terminate and the trust property should be conveyed, assigned and paid over to the beneficiary, James Hall Stackpole. When the trust indenture was executed both settlor and trustee were over 21 years old.

Clause E of the third paragraph of the indenture provides that:

"Any and all stock dividends which shall be received by the Trustee with respect to any securities at any time held in the trust shall be deemed to constitute principal of the trust and shall be treated accordingly."

On December 31, 1936, Stackpole Carbon Company recapitalized and issued 40 shares of its capital stock, having a book value of $70.90 per share, for each share outstanding. For the 210 shares held by trustee, there was issued to him 8,400 shares having a total book value of $150,360. To maintain the original book or intact value of $113,664.60 as of March 31, 1930, 6,350 shares were required, the balance of 2,050 shares representing capitalization of earnings of Stackpole Carbon Company accrued since March 31, 1930.

On December 31, 1939, Stackpole Carbon Company declared a stock dividend of 9 shares for every 16

shares outstanding, and therefore issued to the trustee 4,725 shares as a dividend on the 8,400 shares held by him. Thereafter, the stock of the company had a book value of $12.35 per share. Of the 4,725 shares received by the trustee, 1,153 shares represented a dividend on the 2,050 shares above referred to and 3,572 shares represented a dividend on the remaining 5,350 shares held by the trustee, of which 718 shares represented capitalization of earnings in excess of the intact value of the stock to the trust.

Harry C. Stackpole died on February 3, 1945, leaving a last will and testament duly probated and recorded in Elk County on February 19, 1945, in Will Book E, page 81.

The first and final account filed by the trustee on June 23, 1948, shows that the 2,050 shares, 1,153 shares and 718 shares, aggregating 3,921 shares, were treated and held as principal of the trust and that subsequent to Mr. Stackpole's death, cash dividends of $26,906.25 were received by the trustee, also named as beneficiary in the trust indenture, of which $8,039.05 represents cash dividends on the 3,921 shares of stock.

By the terms of Mr. Stackpole's will, one fifth of his residuary estate was placed in trust for his minor son, Jude Stackpole, the income therefrom to be paid to him from time to time until he reached the age of 30 years when the one fifth share was to be assigned and paid to him absolutely.

Because of various conflicting interests, George J. Fehrenbach was appointed guardian ad litem for Jude Stackpole by the Orphans' Court of Elk County, with authority to claim in the name of the executors of Mr. Stackpole's will, in this accounting, such stock dividends of Stackpole Carbon Company as were believed by him to properly belong to decedent's estate or any other property to which decedent's estate was entitled

by reason of any rights of decedent under trust indenture. The guardian ad litem thereupon filed exceptions to the first and final account of the trustee, contending that the stock dividends aggregating 3,921 shares were improperly capitalized as a part of the corpus of the trust, thereby creating an illegal accumulation under the Act of April 18, 1853, P. L. 503, sec. 9, as amended, 20 PS §3251, that the stock dividends aggregating 3,921 shares were in fact income of the trust which is now payable to Mr. Stackpole's estate because Mr. Stackpole did not collect the dividends himself during his lifetime and therefore, upon his death, these stock dividends reverted to his estate as an asset thereof, together with the sum of $8,038.05 representing cash dividends on the 3,921 shares paid by the carbon company after Mr. Stackpole's death.

The only restriction on accumulation in Pennsylvania is found in the Act of April 18, 1853, P. L. 503, sec. 9, as amended by the Act of April 14, 1931, P. L. 29, 20 PS §3251. The pertinent portion of the act is:

"No person or persons shall, after the passing of this act, by any deed, will, or otherwise, settle or dispose of any real or personal property, so and in such manner that the rents, issues, interest, or profits thereof, shall be wholly or partially accumulated for any longer term than the life or lives of any such grantor or grantors, settler or settlers, or testator, and the term of twenty-one years from the death of any such grantor, settler, or testator, that is to say, only after such decease during the minority or respective minorities with allowance for the period of gestation of any person or persons, who, under the uses or trusts of the deed, will, or other assurance directing such accumulation, would, for the time being, if of full age, be entitled unto the rents, issues, interests, and profits so directed to accumulate, and in every case where any accumulation shall be directed otherwise than as

aforesaid, such direction shall be null and void in so far as it shall exceed the limits of this act, and the rents, issues, interests and profits, so directed to be accumulated contrary to the provisions of this act, shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed."

The total period during which accumulations are permissible is provided in the act to be "the life or lives of any such . . . settler . . . and the term of twenty-one years from the death of any such . . . settler". This clause is in the conjunctive, joining the settlor's lifetime with a term of 21 years from his death, thereby forming an entire period during which income may be lawfully accumulated. Therefore, if an accumulation is permissible during a life and 21 years thereafter, it logically follows that an accumulation is good during the life alone.

The succeeding words of the act, "that is to say, only after such decease during the minority or respective minorities with allowance for the period of gestation of the person or persons who . . . would . . . if of full age, be entitled, etc.", explain and limit, not the whole of the clause preceding, but only that portion which relates to the 21-year period following the settlor's death. If construed otherwise, it would not have been necessary to refer to the period of settlor's own life. Thus, the allowable period of accumulation is the life of the settlor, plus the minority of the subsequent beneficiary, which in no event can exceed the period of gestation and 21 years thereafter.

The Pennsylvania Act of April 18, 1853, is taken in part from an English act of Parliament, known as the Thellusson Act. In comparing the English act and the Pennsylvania act, it will be noted that the third clause of the English act is omitted from the Pennsyl-

vania act, and the second clause of the English act is inserted merely as introductory to the fourth clause of the Pennsylvania act, the expression "that is to say" being used in the Pennsylvania act merely to qualify and explain the words immediately preceding them. It might be argued that by the terms of the Pennsylvania act, accumulations are permitted for a certain term, viz., for 21 years after settlor's death, and this would undoubtedly have been the case had it not been for the explanatory words referred to. Therefore accumulation after the death of the settlor is restricted to the special minority of the person who would, if of full age, be entitled to the income directed to be accumulated.

However, there is nothing in the act which restricts the accumulation of income during the life of the settlor. It is only after settlor's death that accumulation is restricted to the minority of the person entitled to the income directed to be accumulated. The term of 21 years from the death of the settlor cannot, of course, commence to run until settlor has died.

Exceptant, however, argues that because Mr. Stackpole did not, during his lifetime, receive the stock issued in the recapitalization of the company and the stock dividends subsequently declared, the trust agreement directing the accumulation of all stock dividends is void as to such stock issues. This argument, however, overlooks the fact that there is, as previously stated, no provision in the act restricting the accumulation of income during the life of the settlor. James Hall Stackpole, beneficiary, was of full age when the trust agreement was executed in 1930, and therefore the question of his minority is not a matter in issue. If, because of the direction to accumulate income during the life of the settlor, the trust agreement is held to be void as to such income accumulated as therein

directed, no person could by a trust indenture do what he could do himself during his own lifetime. The act does not prohibit accumulations during the life of a settlor. On the contrary, the prohibition against accumulation commences to run and is in effect only after the death of the settlor.

There are no reported decisions holding that income may not be accumulated and added to principal of a trust during the life of a settlor. There appears to be only two reported cases dealing with inter vivos trusts, viz.: Carson's Appeal, 99 Pa. 325, and Evans' Deed of Trust, 87 Pitts. L. J. 83. All other cases construing the Act of 1853 deal with testamentary trusts in which accumulations of income were directed by a will which did not become effective until after the death of testator, and in which the only questions involved were whether income could be accumulated for the benefit of a beneficiary after the beneficiary became 21 years old. These cases beginning with Washington's Estate, 75 Pa. 102 (1874), uniformly hold that income may not be accumulated after the beneficiary reaches his majority. Since these cases deal only with testamentary trusts which became effective only upon the death of testator and do not deal with the question of accumulations during the life of a settlor they are not controlling herein.

Exceptant cites Carson's Appeal, supra, for the proposition that accumulations and capitalizations of income during the lifetime of a settlor are invalidated by the Act of 1853. A careful reading of that opinion shows that the Supreme Court did not hold that a direction in a trust indenture to accumulate and capitalize income during the lifetime of the settlor was invalid. The facts therein were that in 1866 Matthew Baird, by a trust indenture, transferred securities to a trustee, inter alia, for his three daughters and with respect to their shares he provided that the income

should be applied to their maintenance and education until they became 21 years or married, and that any portion of such income not so applied should be invested, that is, accumulated. He further provided that as the daughters married or became 21 years of age the trustee should "pay the dividend, interest and income of one full equal third part of said three-sixths of said stocks, loans and securities, together with the accumulations of income, which shall have been invested, as the same shall be received", to the three daughters "for and during all the term of the natural lives of said daughters respectively", and at their death as they might appoint by will, otherwise to their children, etc. Matthew Baird died in May 1877, and one daughter, Ella, became 21 years of age on August 14, 1877. When she became 21 years old the accumulation of income on her share amounted to more than $100,000 and she petitioned the court to distribute such accumulation to her. The only question involved was whether the statutory provision against accumulations was violated by the requirement of the trust indenture that the surplus accumulations of income during minority be added to the original corpus and only the income on the whole paid to her after her majority or her marriage.

Citing Washington's Estate, 75 Pa. 102, Stille's Estate, 4 W. N. C. 42, and McKee's Appeal, 96 Pa. 277, the Supreme Court held that the direction in the trust indenture that income accruing during minority and not used for the support, maintenance or education of the daughter should be capitalized at her majority and income on the whole paid to her for life, violated the Act of 1853, and therefore such accumulations were payable to the daughter at her majority. Subsequently, the Supreme Court was asked to modify its decree so

as to preserve in the trust, undistributed, so much of the accumulations as had accrued during the settlor's own lifetime. This application was refused on the ground that "this deed contains no direction for accumulation during the grantor's life. It vests the property in the trustee for use of certain persons, with directions for accumulation during their minority". The effect of this decision, therefore, is not that income cannot be accumulated during the life of settlor but only that in this particular case the accumulations were invalid because there was no direction in the trust indenture to accumulate during the life of the settlor, but on the contrary the direction was to accumulate during the minority of the beneficiaries. Consequently this decision rests not upon the prohibitions contained in the Act of 1853, but solely upon the phraseology used in the trust indenture, and the Supreme Court did not hold that a direction in a trust indenture to accumulate during the lifetime of a settlor was invalid, or prohibited by the Act of 1853.

In Evans' Deed of Trust, supra, one of the questions involved was whether a direction to accumulate and capitalize income during the life of the settlor for the benefit of her daughter was a violation of the Act of 1853. In that case it appears that Mrs. Evans executed five separate written agreements in each of which she appointed trustees for each one of her five children and transferred to the trustees various securities. These trust indentures not only defined the powers and duties of the trustees, prescribed the times and manner in which distribution of corpus and income should be made, but also the persons who should receive the same. The trustees were obligated to accumulate income during certain specified periods and to make distribution thereof at various times. The trustees filed an account in each of the trusts and at the audit thereof each of

the five children claimed that the provision for accumulation was illegal and that all accumulations were presently distributable to them. Mrs. Evans, settlor, was living at the time the accounts were filed and the audits were held and when the trusts were created three of her children were adults and two were minors, but upon the audit of the accounts all of the children were of full age.

The accounts showed that certain income had been accumulated and was held by the trustees, and one question before the court was whether the provisions for accumulation of income during the settlor's lifetime were valid.

One of the provisions of the trust indenture was "In the event of my death prior to the death of my said daughter, the Trustees shall distribute to my said daughter on my death all income of the trust estate which then may remain accumulated in the hands of the Trustees".

After reciting the Act of April 18, 1853, as amended, Trimble, P. J., referring to Carson's Appeal, supra, held:

"To use Carson's Appeal, supra, as authority here we must find an implied intention to accomplish an unexpressed purpose as the equivalent of one which is expressed, and by doing so deny to Mrs. Evans the privilege which is not prohibited by the Act. Such racking of language is unwarrantable."

"Under the Act capitalization of income in this trust must end at the *settlor's death,* which event has not happened, so that all accumulations of income not already distributed under the discretionary power and authority given to the trustees in the deed and which may be hereafter received by them *during the life of Mrs. Evans* will remain subject to their control and

management, and be capitalized or distributed by them in their discretion for the benefit of settlor's daughter.

"There can be no more valid legal objection to Mrs. Evans' plan for increasing her bounty to her child than if she had directed accumulation for herself, or had directed others to do it for her. This grant, with the direction to accumulate and capitalize income for the benefit of her daughter, could not create *in the life time of Mrs. Evans* the mischief which provoked the Thellusson Act or the Pennsylvania Act above quoted." (Italics supplied.)

By the specific terms of the trust indenture now before the court, the trust terminated and the trust property was directed to be paid and conveyed to the beneficiary upon the death of settlor, and therefore there would be no accumulation of income following Mr. Stackpole's death. The provision to capitalize and accumulate stock dividends during Mr. Stackpole's life was a valid one and was not prohibited by the Act of 1853. The stock of Stackpole Carbon Company received by the trustee and added to the principal of the trust res together with the sum of $8,038.05, representing cash dividends paid by the company after Mr. Stackpole's death, do not belong to Mr. Stackpole's estate but are the property of and belong to the beneficiary.

The exceptions must be dismissed and the first and final account of the trustee confirmed absolutely.

### Order

Now, November 4, 1949, the exceptions filed by George J. Fehrenbach, guardian ad litem for Jude Stackpole to the first and final account of James Hall Stackpole, trustee under the indenture of trust executed by Harry C. Stackpole, dated March 31, 1930, are dismissed and the first and final account of the trustee is confirmed absolutely.